## Howard v. Southern National Bank.

(Decided July 1, 1924.)

### Appeal from Jefferson Circuit Court (Common Pleas, Fourth Division).

1. Compositions with Creditors—Accommodation Makers Held Not Discharged by Composition Arrangement Between Creditors and Principal.—In view of Negotiable Instruments Act, sections 29, 119, 191, accommodation makers of a promissory note are not discharged from liability when corporate principal becomes insolvent and enters into composition arrangement with creditors, including payee in note, whereby payee accepts its pro rata share of proceeds, and principal is discharged when its assets are liquidated and proportionately applied to payment of note.
2. Bills and Notes—Payee Not Required to Sue all Makers.—Payee bank in promissory note was not required to sue all makers, but

was privileged to sue any one or more of them and collect whole amount.

WM. F. CLARKE, JR., for appellants.

SHACKELFORD MILLER, JR., for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE SAMPSON —Affirming.

Are accomodation makers of a promissory note discharged from liability when the corporate principal becomes insolvent and enters into a composition arrangement with its creditors, including the payee in the note, whereby the creditor bank accepts its *pro rata* share of the proceeds arising from a liquidation of the estate of the insolvent payor, a corporation, and the principal is discharged when its assets are liquidated and proportionately applied to the payment of the note?

On June 21, 1915, a note for $1,800.00 was executed to the appellee bank, signed "Tydings-Dickson Company, by its president," and by F. G. Erskine, R. H. Tydings, and the appellants, E. S. Howard and J. A. Dickson. The note was a joint obligation, and was signed by all the makers as joint and several makers. There is no question of endorsers in the case. Subsequent to maturity of the note, which had not been paid, the Tydings-Dickson Company, one of the makers, made a composition with its creditors, and the creditors, including the appellee, were paid a certain amount at different times in satisfaction of their claim against the Tydings-Dickson Company. These payments to the appellee bank amounted to about $800.00, and it later brought this action against Howard and Dickson for the remaining $1,000.00 with interest.

The only real point in issue is the effect of this composition settlement with the Tydings-Dickson Company on the liability of the other co-makers of the note. The appellants contend that the note was discharged and their liability on it released entirely by this composition settlement with one of the makers, while the appellee takes the position that the note was not discharged, but the Tydings-Dickson company only was released from its obligation on the note when the amount realized from the liquidation of the assets of that company was credited on the note, the other makers remaining liable for the balance.

It is admitted that appellee bank was a party to the creditors' agreement whereby the Tydings-Dickson Company was discharged from further liability upon the note of $1,800.00 which is the subject of this litigation, but it is denied by the bank that the appellants, or either of them, were discharged by reason of the composition agreement. The composition agreement is not in the record, but we find what purports to be a skeleton or office copy of it which, after including the list of assets and liabilities, reads as follows:

"Whereas, at a meeting of stockholders of Tydings-Dickson Co., held in the directors' room of Louisville Trust Company building, there were present Mrs. Erskine and Miss Ray, owning all the preferred stock, and Messrs. Tydings, Dickson and Erskine, owning all the common stock except 10 shares owned by Sidney Howard. The following statement was presented by the president:

ASSETS:

Ledger accounts,

Etc.

LIABILITIES:

Etc.

"The creditors represented were Lippincott & Co., by Reogge; Hyman Pickle Co., by W. G. Miller; Southern National Bank, by Thomas A. Barker; Morgan-Abbott Barker Co., by J. D. Abbott.

"From the statement it appears that the corporation was in a bad financial condition and on motion a creditors' committee was appointed, to consist of Messrs. Miller, Abbott & Barker, which committee was authorized to convert assets into cash and to collect accounts, making settlement of same upon best basis possible, provided, however, that no creditor shall receive in excess of seventy (70) per cent. of claim.

"It is further understood as follows:

"The business of the company and all books, etc., shall be moved in the office of Hyman Pickle Co., and the rent of the present building either reduced for remainder of term or settled in order to save expense.

"Tydings & Dickson are to receive nothing for services in making collections of old accounts, but shall be paid any actual expenses incurred in actually making collections, and all collections shall be reported daily to W. G. Miller. All deposits shall be made in America Southern National Bank to credit of Tydings-Dickson Co. All checks to be signed by either Miller or Abbott, representing creditors' committee and approved by Thomas A. Barker. Distribution shall be made among creditors whenever ten per cent. can be paid.

"Expenses of the week ending February 5th, 1916, to be paid out of receipts. It is understood that a shipment has been received from Lippincott & Co. amounting to $69.20, and it is to be paid. No other merchandise to be bought by Tydings-Dickson Co. without full approval of creditors' committee.

"Whereas, signatures of the preferred stockholders of Tydings, Dickson & Erskine and of Tydings-Dickson Co., and of the four creditors above referred to as represented this 4th day of February, 1916, the creditors' committee is authorized to settle all claims less than five dollars in full and to make settlement of any other claims at any time without a creditors' meeting, if any creditor will accept 30 per cent. in full settlement."

There is nothing in the written agreement which would warrant the presumption that the bank intended to discharge any of the makers of the note save the Tydings-Dickson Co.

It must be admitted that the appellants, Howard and Dickson, were merely accommodation makers, for they did not receive any part of the money obtained from the bank on the note but were merely sureties for the Tydings-Dickson Company. "An accommodation party is one who has signed the instrument as maker, . . . without receiving value therefor and for the purpose of lending his name to some other person. Such a person is liable on the instrument to the holder for value, notwithstanding such holder at the time of taking the instrument

knew him to be only an accommodation party." Section 29, Negotiable Act.

Construing this section with section 191 of the same act defining persons primarily liable on instruments, it has been held that an accommodation maker is "the person primarily liable." Baur v. Toplitz, 81 N. Y. State 422.

How an instrument may be discharged is fixed by section 119 of the Negotiable Instruments Act, reading:

"(1)   By payment in due course (sec. 88) by or on behalf of the principal debtor.

"(2)   By payment in due course by the party accommodated, where the instrument is made or accepted for accommodation.

"(3)   By the intentional cancellation (sec. 123) thereof by the holder.

"(4)   By any other act which will discharge a simple contract for the payment of money.

"(5)   When the principal debtor becomes the holder of the instrument at or after maturity in his own right."

It does not appear that the note sued on was discharged by any of the methods set forth in section 119. Although appellees were merely accommodation makers they were "liable on the instrument to the holder for value" just as if they had been principals, and there was no way for them to be discharged except as set out in section 119.   The bank accepted from the insolvent principal all that its assets would produce, which was all that appellants could have obtained under like circumstances. It follows, therefore, that appellants were not prejudiced by the bank's acceptance of a *pro rata* share of the assets of the defunct corporation.   As between the bank and the makers appellants were bound for the whole amount. Appellants were principals as between themselves and the bank.   That one of their co-principals became insolvent and the bank with other creditors took charge of its assets and converted the same into cash and applied the same *pro rata* upon the corporation's indebtedness and the bank agreed to release the insolvent corporation, was no disadvantage whatever to appellants and did not affect their responsibility to the bank.   The bank was not required to sue all of the makers, but was privileged to sue any one or more of them and to collect the whole amount.   The lower court so held, and the judgment is affirmed.