**CITIZENS FIDELITY BANK & TRUST COMPANY, Appellant,**

v.

**Ray STARK et al., Appellees.**

Court of Appeals of Kentucky.

March 22, 1968.

Rehearing Denied Oct. 11, 1968.

Thomas W. Bullit, Marvin J. Hirn, M. Brooks Senn, Bullitt, Dawson & Tarrant, Louisville, for appellant.

John P. Sandidge, Woodward, Hobson & Fulton, Louisville, for appellees.

CULLEN, Commissioner.

Raymond T. Davis and wife and appellees W. Ray Stark and wife were jointly indebted on a note to the Liberty National Bank and Trust Company of Louisville, a note to the First National Lincoln Bank of Louisville, and a note to the Bank of Louisville. Each note was secured by a pledge of stock owned by the Starks. The notes to Liberty and First National totalled approximately $25,000, and the note to Bank of Louisville amounted to $4,000. Davis approached the appellant Citizens Fidelity Bank and Trust Company and told them that he and the Starks would like to consolidate their three loans into a single loan to be held by Citizens. The latter bank agreed to the proposal and thereafter Davis delivered to that bank a blank note bearing the signatures of Davis and his wife and two other signatures which purported to be those of the Starks. Citizens Fidelity inserted in the note the sum of $29,500 as the principal amount due (representing the total then due on the three notes to the other banks) ; made out a check to Liberty for the amount due on the note to it, and a check to First National for the amount due on the note to it (but for reasons hereinafter stated it did not make out a check to Bank of Louisville for the amount due on the note to it) ; delivered the checks to Liberty and First National, and "picked up" the notes and collateral held by those two banks; delivered the picked-up notes (which had been stamped "Paid" by Liberty and First National) to Davis; and retained the collateral as security for the note which had been executed to Citizens. A few weeks later the Starks asserted the claim that their signatures on the note to Citizens had been forged by Davis; they denied any liability to Citizens and demanded the return of their collateral. Litigation naturally ensued, in which it was adjudged that the signatures of the Starks had in fact been forged, and that the Starks were not indebted to Citizens and were entitled to the return of their collateral. Citizens has appealed from the judgment, asserting that it is erroneous except as to the adjudication that there was a forgery.

The Starks admit that they had been validly indebted on the notes to Liberty and First National, although Davis had dissipated or misappropriated the proceeds of the loans represented by those notes. The only reason they assert as justifying their complete escape from that indebtedness is that Citizens was chargeable with knowledge that they had not consented to the transfer of their pledged securities to Citizens. This rests on evidence that after an officer of Citizens had discussed with officers of the other three banks the proposal for consolidation of the loans, an officer of Bank of Louisville called back and said that his bank would require a letter from the Starks authorizing transfer to Citizens of the collateral on the note to the Bank of Louisville. Shortly after this call took place Davis came into Citizens bank with the new, blank note purporting to bear the signatures of the Davises and the Starks. The officer of Citizens who was handling the matter told Davis of the fact that Bank of Louisville had asked for a letter from the Starks. Davis promised to obtain such a letter. In the meantime, Citizens proceeded with the "pick-up" of the Liberty and First National notes and collateral, since those two banks had not asked for any specific authorization for release of the collateral held by them. The note and collateral held by Bank of Louisville never were picked up, because Davis never produced a letter of authorization from the Starks.

We are not persuaded that Citizens was put on notice that the Starks had not consented to the consolidation plan and the transfer of their collateral merely because Bank of Louisville stated to Citizens that it would require a letter of authorization from the Starks before transferring the collateral. It appears to us that this was simply a matter of operating policy of Bank of Louisville, rather than a warning of fraud. Neither Liberty nor First National asked for any letter of authorization, and the notes to them were much larger than the

note to Bank of Louisville. Furthermore, the notes themselves specifically authorized a transfer of the notes and collateral.

Even if it were considered that Citizens should have been alerted to the possibility that the Starks had not consented to the loan consolidation plan, it would not follow necessarily that Citizens should be penalized by losing the total amount advanced by it, and the Starks be unjustly enriched in that amount. If Citizens had been alerted, one of two things would have happened. Either Citizens simply would have *bought* the notes from Liberty and First National, taking an *assignment* of the notes and collateral, or Citizens would have backed out of the deal entirely. In either case the Starks still would have owed the money and their collateral would have stayed in pledge. We can see no way in which the Starks were prejudiced by any possible lack of alertness on Citizens' part.

It is our opinion that the action of Citizens in surrendering the original notes to Davis after having permitted them to be marked "Paid" by Liberty and First National did not operate to discharge the indebtedness of the Starks nor to release the collateral that had been pledged to secure the indebtedness. This is so because the cancellation and surrender of the original notes were the result of fraud. See Stratton v. McMakin, 84 Ky. 641; 10 C.J.S. Bills and Notes § 475 b., pp. 1036, 1037.

We think that Citizens properly may be treated as being a transferee of the notes that had been held by Liberty and First National. See KRS 355.3–603(2). The fact that the notes were marked "Paid" by Liberty and First National is immaterial because whether or not they were so marked did not reflect anybody's intent except Citizens'. It was a matter of no concern to Liberty and First National. The Starks had no intent one way or the other because they did not even know that the transaction was taking place. If, as held by the authorities hereinbefore cited, the *surrender* of the notes did not discharge them, because the

surrender was induced by fraud, it would seem that by the same token the marking of the notes "Paid," induced by the same fraud, would not discharge them. Particularly should this be so because, under KRS 355.3–605(2), cancellation without surrender does not affect the title to the instrument.

Our conclusion is that although the Starks are not liable on the note executed to Citizens, because their signatures on that note were forged, they are liable to Citizens on the notes executed to Liberty and First National, of which Citizens is to be considered a transferee, and Citizens, as such transferee, is entitled to the benefit of the collateral that secured those notes.

The judgment is reversed with directions to enter judgment in accordance with this opinion.

All concur.