**BANK OF AUSTIN, Appellant,**

v.

**Larry T. BARNETT et al., Appellees.**

**No. 12548.**

Court of Civil Appeals of Texas, Austin.

March 30, 1977.

Rehearing Denied April 20, 1977.

Elvis G. Schulze, Law Office of Gilbert Prud'Homme, Austin, for appellant.

Milton L. Bankston, Ruth B. Pennebaker, Stubbeman, McRae, Sealy, Laughlin & Browder, William T. Hall, Stayton, Maloney, Hearne & Babb, Austin, for appellees.

PHILLIPS, Chief Justice.

This case turns on the question of whether appellant bank retained its purchase money lien on certain oil paintings it financed for appellee Larry Barnett, and whether it also retained its security interest in several other paintings held as collateral. Upon jury findings, inimical to the bank's position, judgment was rendered for appellees.

We reverse the judgment of the trial court and remand the case for a new trial.

In addition to finding that appellant bank had lost its lien on the oil paintings due to several renegotiations and consolidations of the debt owed by Barnett described later in this opinion, the jury found that appellees, then husband and wife, made a gift of the paintings to their children. Inasmuch as the court's judgment was favorable to appellees, and as the Barnetts were divorced at time of trial, attorney's fees were awarded to the children's guardian *ad litem* who had been appointed to represent the children's interest during the trial of the cause.

Appellant bank has assigned error to the judgment awarding the paintings to the children and also the attorney's fees awarded them; however, due to our disposition of the case, we do not reach these points.

Larry Barnett began purchasing oil paintings in 1969. His first four paintings were financed by a purchase money note held by appellant with the four paintings serving as security. On August 31, 1971, Barnett purchased a Robert Wood painting also financed by appellant. This painting also served as security for the note. On January 10, 1972, Barnett executed another note with appellant, again signing a security agreement which listed the remainder of the paintings as collateral. The collateral was described by an attached list of the paintings and other equipment.

The 1969 note, another note executed in 1970, and the January 1972 note were later "renewed and combined" into one note on August 30, 1972. The security agreement entered into on this day lists only the four paintings bought in 1969 as collateral.

However, on the security agreement of January 10, 1972, there is a notation that "the equipment on this security agreement secures note for $9,826.80 dated Aug. 30, 1972 which is a renewal of note 29435 Jan. 10, 1972." Barnett's signature appears under this notation. Supposedly the attached list describing the collateral on the January 10th security agreement was taken therefrom and attached to the August 30th security agreement. On June 21, 1974, the outstanding balance of the August 30, 1972, note was combined into a new note executed that day. The original January 10, 1972, description of collateral that was allegedly attached to the August 30th security agreement was allegedly taken therefrom and then attached to the June 21st note to serve as a description of the collateral.

Back in February of 1973 the August 1971 note was renewed and its security, the Robert Wood painting, as well as a Robert Wesley Amich painting, was listed as security on this renewal note.

The special issues numbers 10–17 which were submitted to the jury inquired whether the jury found that the 1969, 1971, January 1972 and August 1972 notes were returned by appellant to Barnett. These issues further inquired of the jury that if such notes were returned to Barnett, did the bank intend to cancel the notes. The court did not submit issues with respect to whether the bank intended to release its security interest in the paintings. The jury answered the issues submitted in the affirmative.

We regard as "omitted issues" those issues not submitted which concerned whether the bank intended to release its security interest in the paintings. Tex.R. Civ.P. 279. Omitted issues, constituting only a part of a complete and independent ground of recovery and being merely supplemental or incidental to other issues submitted and answered, and if supported by evidence, are deemed found in support of the judgment. Hodges, *Special Issue Submission in Texas*, Sections 74, 76 (1959, with 1969 Sup.).

 The court's judgment apparently is based on the assumption that in combining and renewing the notes and in delivering the canceled notes to Barnett, appellant bank intended to relinquish its security in the paintings. There is also some confusion in the testimony as to what security followed what notes in the maze of transactions outlined above. However, in our opinion, the evidence of any intent to release the original indebtedness as well as the collateral securing such indebtedness on the part of the bank is insufficient [1] to support the judgment.

 *Schwab v. Schlumberger Well Surveying Corp.*, 145 Tex. 379, 198 S.W.2d 79 (1946), states that the giving of a new note for a debt evidenced by a former note does not extinguish the original indebtedness unless such is the intention of the parties. Such intention is never presumed and the burden of proving the discharge or novation is therefore upon the one who asserts it. In general, the renewal merely operates as an extension of time in which to pay the original indebtedness. The debt is not thereby increased. It remains the same; it is in substance and in fact the same indebtedness evidenced by a new promise. Also see *Smith v. First Pasadena State Bank*, 401 S.W.2d 123 (Tex.Civ.App.1966, no writ).

Section 3.605 of the Texas Business and Commerce Code does not appear to alter the rule. Although we have found no Texas cases since the adoption of the Uniform Commercial Code on this point, *Slaughter v. Philadelphia National Bank*, 290 F.Supp. 234 (E.D.Pa.1968), and *Mid-Eastern Electronics, Inc. v. First National Bank of Southern Maryland*, 7 U.C.C. 1089 (4th Cir. 1970), also state that it is the intention of the parties that determines whether the original indebtedness, and as such the collateral securing such indebtedness is released by the giving of a renewal note.

In applying this rule to the facts of this case, it becomes apparent that there is insufficient evidence of any intent on the part of the bank to release its security for the various loans. Although the original notes, on renewal, were returned to Barnett, they were marked "Paid by Renewal" and the evidence further indicates that appellant bank was intending to retain the same security for the renewal notes as it had on the original indebtedness by again attaching the list of paintings originally used to describe the collateral on the renewal notes.

In addition, there is testimony by the president of the bank, the vice president, as well as by Barnett himself. It appears from this testimony that it was not the intent of the parties to cancel the original indebtedness. Evidence presented by appellee was simply insufficient to sustain the judgment.

Judgment of the trial court is reversed and the cause is remanded for a new trial.

---

1. See *In Re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951), for the standard assigned to the courts of civil appeals in evaluating the evidence.