**HUBBARD REALTY COMPANY, INC., a West Virginia Corporation, Appellant,**

v.

**The FIRST NATIONAL BANK OF PIKEVILLE, a National Banking Association, Appellee.**

No. 82–1422.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 10, 1983.

Decided April 11, 1983.

Edward M. Kowal, Jr., Huntington, W. Va. (James D. McQueen, Campbell, Woods, Bagley, Emerson, McNeer & Herndon, Huntington, W. Va., on brief), for appellant.

Donald Combs, Pikeville, Ky. (H. Truman Chafin, Williamson, W. Va., on brief), for appellee.

Before WIDENER and PHILLIPS, Circuit Judges, BUTZNER, Senior Circuit Judge.

JAMES DICKSON PHILLIPS, Circuit Judge:

This is a diversity action commenced by Hubbard Realty Company, Inc. (Hubbard Realty), a closely-held West Virginia corpo-

ration, against The First National Bank of Pikeville (the Bank), a national banking association with offices in Pike County, Kentucky, to set aside a deed of trust held by the Bank. The district court granted Hubbard Realty's motion for summary judgment, a result not contested on appeal. The court also granted the Bank's motion for leave to file a counterclaim against Hubbard Realty, alleging that Hubbard Realty owed the Bank $27,000, plus interest, as evidenced by two promissory notes. At the conclusion of all the evidence on trial of the Bank's counterclaim, the district court directed a verdict in favor of the Bank, after which Hubbard Realty took this appeal. We affirm.

I

In October of 1976 and March of 1977, Robert Hubbard, who was then president of Hubbard Realty, borrowed $12,000 and $15,000 from the Bank. These loans were evidenced by two 90-day promissory notes, executed by Robert in the name of the corporation; each note was signed "Hubbard Realty Co. by Robert Hubbard."[1]

No portion of the principal amount of these notes has been paid. Rather, as each note became due, Robert Hubbard paid the accrued interest and executed another note in the same principal amount, and on the same terms, as the prior one. The Bank's practice was to stamp the superseded note "Paid by Renewal," "Paid," "Renewal," or "Renewed," and surrender the instrument to Robert Hubbard. Prior to the disputed transactions of late 1979, Robert Hubbard had, in the manner described, renewed the $12,000 note on eight occasions and the $15,000 note on ten.

Katherine Hubbard McCoy and Mrs. Hubbard (mother of Robert and Katherine) together owned 66⅔% of the outstanding shares of Hubbard Realty and Robert owned the remaining one-third of the corporate stock. In mid-1979, Mrs. Hubbard and her daughter became dissatisfied with Robert Hubbard's conduct of the business. After they learned that Robert had, without their knowledge or consent, executed a promissory note in favor of a local bank, in the name of Hubbard Realty, they ousted him as president of the corporation.

In October of 1979, Katherine Hubbard McCoy, who was now president of Hubbard Realty, telephoned G. Robert Roberts, a vice-president of The First National Bank of Pikeville, to determine whether Hubbard Realty had any outstanding debts to the Bank. During this conversation, Katherine informed Roberts of the Bank that Robert Hubbard had been removed as an officer of Hubbard Realty and was no longer authorized to act on its behalf. The Bank received written notice of Robert Hubbard's lack of authority by mid-December, 1979.

The Bank nevertheless permitted Robert Hubbard, on November 4 and December 29, 1979, to execute two new 90-day promissory notes in the amount of $12,000 and $15,000 to replace the earlier notes as they became due. As was consistent with their practice, Robert Hubbard signed the notes "Hubbard Realty Co. by Robert Hubbard," and the Bank stamped the earlier instruments "Paid by Renewal," "Paid," "Renewal," or "Renewed" and presumably surrendered them to Robert Hubbard.[2]

Hubbard Realty conceded at trial that Robert Hubbard had authority to act for the corporation when the Bank originally extended the loans. Likewise, Hubbard Realty did not dispute the authenticity of Robert Hubbard's signature on the notes. Its sole defense was that Robert Hubbard was not authorized to act on its behalf when he signed the last promissory notes in late 1979 and that accordingly the obligations evidenced by the last authorized notes had been discharged by surrender of those notes with an endorsement indicating that they had been satisfied.

The district court granted the Bank's motion for a directed verdict on the grounds

---

1. Although Hubbard Realty maintains that it never received the proceeds of these loans, it concedes that Robert Hubbard was authorized to execute the notes in his capacity as president of Hubbard Realty.

2. The record is silent regarding what subsequently happened to the surrendered notes.

that, without regard to Robert's authority to renew the notes in the disputed transactions, Hubbard Realty had never paid, or been discharged from, its original obligations to the Bank, which were incurred while Robert Hubbard was possessed of undoubted authority to bind the corporation. On this basis judgment was entered against Hubbard Realty for the principal amount of the two notes, plus interest. Following denial of Hubbard Realty's motion for a new trial, this appeal was taken.

## II

The Bank is located in Kentucky, whose law governs this transaction. *See First National Bank v. Whaley,* 284 S.E.2d 618 (W.Va.1981). Resolution of this case depends upon the interpretation to be given to Kentucky's enactment of § 3–605 of the Uniform Commercial Code (UCC) which in relevant part provides that "the holder of an instrument may even without consideration discharge any party ... by renouncing his rights ... by surrender of the instrument to the party to be discharged." Ky. Rev.Stat. § 355.3–605(1)(b) (1972).

The Bank argues that its surrender to Robert Hubbard of the earlier promissory notes did not discharge Hubbard Realty's indebtedness to the Bank because the parties, and specifically the Bank, did not intend to discharge the indebtedness. The appellant contends that the express terms of § 355.3–605(1)(b)[3] make intent irrelevant in determining whether surrender of an instrument constitutes discharge; rather, the Bank's deliberate actions of marking the notes and turning them over to Robert Hubbard relieved Hubbard Realty of its obligations to the Bank. In the alternative, Hubbard Realty submits that, even if intention is dispositive under § 355.3–605, there was sufficient evidence adduced at trial to put the parties' intent in issue and that, therefore, the district court's direction of a verdict in favor of the Bank was improper.

### A

No Kentucky decision addressing the precise issue that is dispositive here has been brought to our attention. Several Kentucky decisions interpreting that state's law, however, suggest that intent is relevant in determining whether surrender of a note discharges the underlying obligation when a renewal note carrying forward the same obligation evidenced by the surrendered note is arguably given as part of the surrender transaction. In *Citizens Fidelity Bank & Trust v. Stark,* 431 S.W.2d 722 (Ky.App.1968), decided after the enactment of § 355.3–605, the court held that a bank's cancellation and surrender of original notes did not discharge the indebtedness of one of the makers of the original notes, where the action by the bank was induced by fraud on the part of a co-maker of the original notes. The court in *Stark* deemed "immaterial" the fact that the lender had marked "Paid" on the instruments because that notation did not reflect the intent of the parties.

Hubbard Realty concedes that intent may be relevant to discharge where, as in *Stark,* surrender of an instrument is induced by fraud, but argues that the principle becomes inapplicable in garden-variety commercial transactions. But we think that the principle has not been so confined under Kentucky law. Indeed, the Sixth Circuit recently observed that under "Kentucky law a renewal note, as distinguished from a novation, does not extinguish an existing obligation .... The determination of whether a later note is a renewal of an earlier one depends on the intent of the parties." *Clare v. First National Bank (In re Cooley),* 624 F.2d 55, 57 (6th Cir.1980).

**3.** Hubbard Realty's essential argument that, for the sake of stability and certainty in commercial transactions, § 355.3–605(1)(b) should simply be applied according to its literal terms to compel a finding of discharge because of the notes' surrender is flawed on its best, literalist, terms. The final phrase of that section provides for discharge by surrender of an instrument "to the party to be discharged." To contend, as must be done to sustain the literalist approach here, that Robert Hubbard was simultaneously not authorized to bind the corporation in executing the new notes but authorized, on behalf of the corporation, to accept surrender of the superseded instruments as an operative act of discharge involves patently inconsistent legal positions. Since this alternative theory was not developed below or on appeal, we do not rest our decision upon it.

*Accord Commercial Bank v. Carter (In re Cantrill Construction Co.),* 418 F.2d 705, 707 (6th Cir.1969); *ITT Industrial Credit Co. v. Union Bank and Trust Co.,* 615 S.W.2d 2 (Ky.App.1981); *White v. Winchester Land Development Corp.,* 584 S.W.2d 56 (Ky.App. 1979); *Georgi v. First National Bank,* 557 S.W.2d 442 (Ky.App.1977); *Amlung v. First National Lincoln Bank,* 411 S.W.2d 465 (Ky. App.1967).[4]

■ We accordingly hold that under Kentucky's application of the controlling UCC provision, the effect of the surrender of a promissory note in conjunction with the making of a renewal note that carries forward the terms of the surrendered note is determined by the intention of the parties.

There remains the question whether the district court, applying this principle, properly directed verdict against the debtor claiming complete discharge by surrender.

### B

■ On the issue of discharge as determined by the parties' intention, the burden of proof was upon Hubbard Realty as debtor to show as a matter of affirmative defense that the intention was to discharge the conceded original obligation upon which the Bank's counterclaim was based. Fed.R. Civ.P. 8(c). Because the affirmative defense of discharge was the sole issue on the Bank's counterclaim, the standard for assessing the sufficiency of the evidence on the Bank's motion for directed verdict was the normal one where the moving party does not have the burden of proof. *See generally* 9 C. Wright & A. Miller, *Federal Practice and Procedure* §§ 2524, 2535. Applying that standard of sufficiency, the district court properly determined that Hubbard Realty's evidence, construed in the light most favorable to that party, was not sufficient to support a finding that the parties intended by the surrender-renewal transaction completely to discharge the obligation evidenced in the surrendered note, leaving only the unauthorized renewal note as the basis for any continuing obligation. Against the compelling inference that the parties—particularly the Bank—could not have intended such a draconian consequence given the undisputed fact that the obligation had never been actually satisfied, Hubbard Realty offered only the most meager evidence to support a contrary inference. Essentially, Hubbard relied upon its evidence that the Bank had surrendered to Robert Hubbard each of the earlier renewal notes; that no clerical error of the Bank or fraud on Hubbard Realty's part was involved; that the Bank's ledger sheets reflected the issuance of new notes as a new loan with the old loan paid off; and that

---

**4.** *See also Mid-Eastern Electronics, Inc. v. First National Bank,* 455 F.2d 141 (4th Cir.1970) (intention controls; construing comparable U.C.C. provision); *People's Bank v. Robinson,* 272 S.C. 155, 249 S.E.2d 784 (S.C.1978) (same); *Bank of Austin v. Barnett,* 549 S.W.2d 428 (Tex.Civ.App.1977) (same). *See generally* J. White & R. Summers, *Handbook of the Law Under the Uniform Commercial Code* § 13–19 (2d ed. 1980).

Hubbard Realty's reliance on *Peterson v. Crown Financial Corp.,* 661 F.2d 287 (3d Cir. 1981), is misplaced. Aside from the fact that the *Peterson* court was not applying Kentucky law, its specific holding upon which Hubbard Realty relies is inapposite in the context of this case. *Peterson* dealt narrowly with the effect of surrender of a note marked "cancelled" upon the lender's right to recover interest accrued on that note that was not specifically carried over into a "renewal" note for the same principal amount that was taken upon surrender of the "cancelled" note. Hubbard Realty relies upon the court's specific holding that under the circumstances, the lender's subjective intent that the discharge did not run to accrued interest was irrelevant, and that surrender as a matter of law did discharge the whole indebtedness, principal and interest, on the original note. *Id.* at 292. In so holding, however, the *Peterson* court was careful to note that "whether a renewal note operates as a discharge of the original note depends on the intention of the parties ... [a] principle [that] ... retains its vitality today." *Id.* at 291. The distinction, said the court, was that in the case before it the question was not whether the renewal note was intended to effect some degree of discharge—a fact conceded—but was whether the discharge went to the whole of the obligation on the surrendered note. *Id.* at 292. That question, said the *Peterson* court, is not affected by subjective intention, once the intention to effect basic discharge of the "cancelled" note is conceded. In the instant case, of course, the question is precisely that of the intention to effect *any* discharge of obligation by the surrender.

the Bank treated the loans as current rather than as uncollectible.

While it may well be that in experience issues of intent are but rarely subject to resolution by directed verdict, we are satisfied that this is such a case. On the evidence adduced, construed in the light most favorable to Hubbard Realty as debtor, no jury could rationally have inferred an intention on the part of these parties that the surrender-renewal transaction was to have the consequence urged by Hubbard Realty. Accordingly, we affirm the district court's judgment.

AFFIRMED.