## AMERICAN FIDELITY BANK & TRUST COMPANY, Appellant,

v.

## Tip HINKLE, Appellee.

### No. 86–CA–1758–MR.

Court of Appeals of Kentucky.

April 1, 1988.

Howard O. Mann, Trimble and Mann, Corbin, for appellant.

Carlos B. Pope, Barbourville, for appellee.

Before COOPER, GUDGEL and McDONALD, JJ.

COOPER, Judge.

This is an appeal from a judgment in favor of the appellee, Tip Hinkle, in an action involving a promissory note. The appellee signed the note with his son-in-law, John Osborne, in order for Osborne to obtain a loan from the appellant, American Fidelity Bank and Trust Company. The appellant sought payment on the note from the appellee when Osborne was later discharged from the debt in a subsequent bankruptcy action. A jury verdict was rendered for the appellee and this appeal follows.

Appellant raises several issues on appeal but the only question we address is whether the bank discharged him on the note. Reviewing the record and applicable law, we believe a directed verdict should have

been granted to the appellant. CR 50.01. Therefore, we reverse and remand.

The facts giving rise to this appeal are as follows: the appellee and Osborne attempted to buy some land in 1977, yet the latter was unable to come up with his share of the down payment. He proposed to get a loan from the appellant in the amount of $5,000. As a condition of the loan, the appellant required an additional signatory on the promissory note. The appellee signed the original promissory note in 1977 and three renewal notes thereafter, including one which extended the loan for an additional $2,500. Thereafter, the appellant accepted eleven more renewals signed by Osborne alone. There is no contention that the appellee received any of the proceeds of the loan.

The appellant characterizes the appellee as a co-maker on the note, while the appellee characterizes himself as a surety. Although it is arguable that the appellee's position is that of a co-maker given the language of the note itself which reads "I, we jointly and severally, promise to pay ...," we believe that an accommodation party or maker is the more accurate description. KRS 355.3–415(1) describes an accommodation party as "one who signs the instrument *in any capacity* for the purpose of lending his name to another party to it." (Emphasis added.) The commentary to the statute specifies that an accommodation party is always a surety, thus a subclass of surety. The distinction we make between accommodation party/surety and co-maker is that if the former must pay the obligation, he has a cause of action against the principal or maker for the full amount. KRS 355.3–415(5). *See also* D. Leibson and R. Nowka, *The Uniform Commercial Code of Kentucky* § 3.3(F) (1983) [hereinafter *"UCC of Ky."*]. In a true co-maker/co-maker arrangement, both makers are jointly and severally liable so that one co-maker paying the entire debt has only a right of contribution from the other co-maker. *UCC of Ky.* § 3.3(F); *Black's Law Dictionary* 751, 297 (5th ed. 1979) [hereinafter *"Black's"*] .

For the purposes of this appeal, it does not matter whether the appellee acted as co-maker, accommodation party or surety, because his liability vis-a-vis the bank is the same. An accommodation party or surety is primarily liable on the debt, just as a co-maker is. KRS 355.3–415 (1983 commentary); *Howard v. Southern National Bank,* 204 Ky. 71, 263 S.W. 719 (1924); *UCC of Ky.* § 3.3(F).

It was established below, without contention, that the signatures on the notes in question were appellee's and that there had been a default in payment. Thus, the appellant was entitled to recover unless the appellee established a defense. KRS 355.3–307(2); Weinberg, *Pleading and Practice in Commercial Paper Cases: Burdens of Proof,* 72 Ky.L.J. 575 (1983–84). Although the appellee's defense below appeared to be a theory of both novation and release, he stated at oral argument that he was relying on an oral release by a former executive vice president of the bank. That executive allegedly told him he no longer needed to sign the note because the bank now trusted Osborne to pay off the loan by himself. The bank disputes this and the former employee was not called to testify. Appellee does not now contend that there was a novation with a new contract being substituted for the old one. *Kirby v. Scroggins,* Ky., 246 S.W.2d 453 (1952).

An oral release without consideration does not meet the legal requisites for either a cancellation or renunciation of a promissory note. KRS 355.3–605. The factual issue of the intention of the parties should never have been submitted to the jury because the appellee was not entitled to judgment on the question of law presented. Having failed to prove a legally cognizable defense, he was not entitled to have the case go to the jury. On the contrary, the appellant should have been granted a directed verdict. CR 50.01.

█ The trial court, in its jury instructions, recognized that the mere failure of the bank to require the appellee to sign each renewal note was not dispositive of the legal issues involved. *Amlung v. First National Lincoln Bank of Louisville,* Ky.,

411 S.W.2d 465 (1967); *Georgi v. First National Bank of Louisville*, Ky.App., 557 S.W.2d 442 (1977). The trial court also recognized the subsequent notes as renewals, i.e. merely extending the time for payment, rather than entirely new obligations; thus the appellee continued to be obligated on the renewals. *See Black's* 1165; 11 Am.Jur.2d *Bills and Notes* § 307 (1963). Furthermore, a renewal note does not extinguish the original debt without some evidence that the parties so intended. *Hubbard Realty Co. v. First National Bank of Pikeville*, 704 F.2d 733 (4th Cir. 1983) (applying Kentucky law); *Matter of Cooley*, 624 F.2d 55 (6th Cir.1980); *Nolin Production Credit Ass'n v. Citizens National Bank*, Ky.App., 709 S.W.2d 466 (1986); *White v. Winchester Land Development Corp.*, Ky.App., 584 S.W.2d 56 (1979); *Georgi, supra* at 443.

■ Here, however, the trial court permitted the factual question of intent to go the jury without first determining whether an oral release without consideration is a legal defense. We do not believe that it is. Kentucky's Uniform Commercial Code (Ch. 355) addresses the way in which a holder of a note may discharge a party to the note when there is no consideration. KRS 355.-3–605 reads:

Cancellation and renunciation

(1) The holder of an instrument may even without consideration discharge any party

(a) in any manner apparent on the face of the instrument or the indorsement, as by intentionally cancelling the instrument or the party's signature by destruction or mutilation, or by striking out the party's signature; or

(b) by renouncing his rights by a writing signed and delivered or by surrender of the instrument to the party to be discharged.

(2) Neither cancellation nor renunciation without surrender of the instrument affects the title thereto.

The commentary to the above statute notes that "methods stated are exclusive." An early Kentucky case interpreting the Negotiable Instruments Law (Acts 1904, c. 102) Ky.St. § 3720b–122—which was a precursor to KRS 356.122 and later KRS 355.3–605—is *Gannon v. Bronston*, 246 Ky. 612, 55 S.W.2d 358 (1932). That case set forth the statute then in effect:

The holder may expressly renounce his rights against any party to the instrument before, at or after its maturity. An absolute and unconditional renunciation of his rights against the principal debtor made at or after the maturity of the instrument discharges the instrument. But a renunciation does not affect the rights of a holder in due course without notice. A renunciation must be in writing, unless the instrument is delivered up to the person primarily liable thereon.

*Id.* 55 S.W.2d at 361. The court in *Gannon* accepted the definition of renunciation given in 54 C.J. p. 392. *Id.* at 362. That definition used the terms "gratuitous abandonment" and "an express waiver without consideration." *Id.* at 362. That is precisely the situation we have here.

The *Gannon* court adopted the majority view that a writing or physical surrender of the note is required only where there has been a true renunciation, i.e. without consideration. *Id.* at 362, 365. The minority view required a writing or surrender in all forms of releases, based on consideration or not. *See also* Annot., 65 A.L.R.2d 593 (1959). The principle that a writing or physical surrender of the note is required to effect a renunciation without consideration was reiterated in *Miller v. Miller*, Ky., 296 S.W.2d 684 (1956) (interpreting KRS 356.122).

■ Conversely, the court in *Hubbard Realty, supra*, seemed to say that although the technical requirements of KRS 355.3–605 may be followed, there is no renunciation absent consideration unless the intention of all the parties is that the note be cancelled. *Id.* at 736 (note was mistakenly surrendered). Thus, it appears to us that a gratuitous renunciation requires both intention and compliance with the statute. *Cf. Greene v. Cotton*, Ky., 457 S.W.2d 493 (1970).

In the instant case, none of the notes was given to either Osborne or the appellee

when a renewal was executed. Nor was there any separate writing or cancelling out of appellee's signature on the notes themselves. As such, we hold that this is not sufficient compliance with KRS 355.3–605. When there is asserted a discharge *without valuable consideration,* there must be evidence from which a fact finder could find intent by the parties that the obligor be released. *And,* there must be a cancellation of the note on its face, or a separate writing evidencing discharge, or a surrender of it, in conformity with KRS 355.3–605.

Other states have taken a similar stand. *See Bihlmire v. Hahn,* 43 F.R.D. 503 (E.D. Wis.1967); *Burton v. National Bank of Commerce of Dallas,* Tex.Ct.App., 679 S.W.2d 115 (1984); *Everton v. Blair,* 99 Idaho 14, 576 P.2d 585 (1978); *Bank of Austin v. Barnett,* Tex.Civ.App., 549 S.W. 2d 428 (1977); *Farmers Union Oil Co. v. Fladeland,* 287 Minn. 315, 178 N.W.2d 254 (1970).

Notwithstanding the jury's verdict in favor of appellee, we find that the statutory methods of cancelling or renouncing an instrument, to effect a valid renunciation without consideration, were not met here. To hold otherwise would wreak havoc in every lending institution in this state. We reverse and remand with directions to enter judgment for appellant.

All concur.