Jim **VIVION** and Ted Clark, both individually and d/b/a Fannin Plaza Offices, Appellants,

v.

**L.A. GRELLING, Appellee.**

**No. 11–91–087–CV.**

Court of Appeals of Texas, Eastland.

Aug. 20, 1992.

Rehearing Denied Sept. 17, 1992.

Keith Dollahite, Jerry Atherton, Hardy & Atherton, Tyler, for appellants.

James L. Hedrick, Potter, Guinn, Minton, Roberts & Davis, William S. Hommel, Jr., Smithson & Hommel, Tyler, for appellee.

OPINION

McCLOUD, Chief Justice.

Jim Vivion and Ted Clark d/b/a Fannin Plaza Offices sued L.A. Grelling d/b/a Grelling Investments seeking a deficiency judgment following a foreclosure sale. The trial court found in favor of Grelling. We affirm.

On August 1, 1982, Jim Vivion, Ted Clark, and James Holley sold to Grelling the commercial property known as Fannin Plaza Offices. Grelling signed a real estate lien note payable to Vivion, Clark, and Holley for the principal sum of $500,000.00 secured by a deed of trust.

On February 1, 1983, Grelling conveyed the property to Ben Fitzgerald and Buster Fitzgerald by an assumption warranty deed, which recited as consideration the Fitzgeralds' assumption of Grelling's original note in the amount of $500,000.00. On the same date, the Fitzgeralds signed a separate real estate lien note payable to Holley, Clark, and Vivion in the amount of $450,000.00. The Fitzgerald note made no reference to the Grelling note. The Fitzgeralds additionally signed an extension of real estate note and lien which recited that the Fitzgeralds assumed payment of the $500,000.00 Grelling note. They also signed a deed of trust which recited that it was "in renewal and extension, but not in extinguishment of, that original indebtedness described in" the deed of trust signed by Grelling.

Grelling signed only the deed; he was not a party to the extension agreement or deed of trust between appellants and the Fitzgeralds. There was no written release discharging Grelling. After the February 1983 transaction, Holley assigned his interest in the Fitzgerald note to Vivion. The assignment made no reference to the Grelling note.

The Fitzgerald note differed in a number of material aspects from the Grelling note: (1) the principal amount differed from Grelling's principal balance prior to the sale; (2) the term of the note decreased from 240 monthly installments (so that Grelling's last payment would be due in 2002) to 179 monthly installments beginning after one year, with the Fitzgeralds' final payment due February 1, 1998; (3) the interest rate changed from a variable interest rate, which began at 12¾ percent, to a set rate of 12 percent; and (4) the payment terms changed from monthly installments of principal and interest in the amount of $5,769.10 to payment of interest only for the first year and, thereafter, monthly installments of principal and interest in the amount of $4,739.52.

When Grelling sold the property, Holley, Vivion, and Clark required Grelling to make a $50,000.00 prepayment to reduce Grelling's principal obligation from $500,-000.00 to $450,000.00. The deed of trust between Grelling and appellants did not contain a due on sale clause. Grelling testified that he made the $50,000.00 prepayment contemporaneously with the closing of the sale to the Fitzgeralds as consideration for being discharged on the indebtedness.

Ben and Buster Fitzgerald thought Grelling was released from any further liability. Buster testified that if they had thought Grelling had any remaining liability, they would have also notified Grelling at the time they notified Vivion and Clark of the impending default on the Fitzgerald note. Vivion testified that, at the time of the transaction, he had no intent to release Grelling from liability.

Grelling's last payment on his note prior to the sale to the Fitzgeralds was designated as the "final" payment. Vivion did not recall making any objection to Grelling's designation of the payment as being "final."

In 1985, the Fitzgeralds defaulted on their note. Vivion contacted Grelling informing him that Vivion and Clark expected Grelling to make the payments and advised him that, if he did not make payments, they would foreclose against the property. Grelling testified that he was surprised to get such notice because he believed that he had been released from liability.

Thomas J. Richardson, employed as Grelling's in-house counsel, testified that Vivion's and Clark's demand for payment was a surprise to Grelling. Richardson testified that Grelling entered into a letter agreement with Clark and Vivion whereby Grelling would temporarily make the Fitzgeralds' payments in order to avoid an impending foreclosure and to give Grelling sufficient time to assess the situation. Vivion insisted that the letter agreement include a provision that Grelling was not released from the Grelling note. Richardson doubted that Grelling had any obligation to Vivion and Clark; he believed there was no obligation to revive.

Appellants foreclosed upon both the Grelling and Fitzgerald deeds of trust. Appellants originally sought a deficiency judgment against both Grelling and the Fitzgeralds but later settled with the Fitzgeralds.

In the first point of error, appellants contend that there is no evidence or, alternatively, insufficient evidence to support the trial court's findings of fact that the parties agreed to a novation. The elements of a novation are: (1) a previous valid obligation; (2) a mutual agreement of all parties to acceptance of a new contract; (3) extinguishment of the old contract or obligation; and (4) validity of the new contract. *Talamas v. Bressi International,* 727 S.W.2d 72 (Tex.App.—San Antonio 1987, writ ref'd n.r.e.) A novation agreement need not be in writing or evidenced by express words of agreement, and an express release is not necessary to effect a

discharge of an original obligation by novation. The intent to accept the new obligation in lieu of and in discharge of the old one may be inferred from the facts and circumstances surrounding the transaction and the conduct of the parties. *Bank of North America v. Bluewater Maintenance, Inc.*, 578 S.W.2d 841 (Tex.Civ. App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.).

In reviewing the no evidence challenge to the trial court's findings, we may consider only the evidence and the inferences that may be reasonably drawn therefrom which are favorable to the findings and must disregard all of the evidence and inferences to the contrary. *Ray v. Farmers' State Bank of Hart*, 576 S.W.2d 607 (Tex.1979). In reviewing the challenge to the factual sufficiency of the evidence to support the trial court's findings, this court must, after examining all of the evidence, determine if the findings are so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Pool v. Ford Motor Company*, 715 S.W.2d 629 (Tex.1986). As trier of fact, it is for the trial court to judge the credibility of the witnesses, to assign the weight to be given to their testimony, and to resolve any conflicts or inconsistencies in the testimony. *Nelson v. Dallas Independent School District*, 774 S.W.2d 380 (Tex.App.—Dallas 1989, writ den'd).

After reviewing the evidence, we hold that the evidence is legally and factually sufficient to support the trial court's express and implied findings of a novation.

Appellants additionally argue under the first point that Grelling ratified his obligation to Vivion and Clark in the 1985 letter agreement in which Grelling agreed to temporarily make the Fitzgeralds' payments to prevent an impending foreclosure. The trial court found in Finding of Fact No. 6 that in such agreement:

"GRELLING agreed to resume paying installments on FITZGERALD'S note to HOLLEY, CLARK and VIVION '.... until such time as GRELLING, in his sole discretion, shall elect to discontinue paying such installments.' GRELL-

ING'S purpose was to 'buy time', until he could clarify his legal position as to his liability if any, on his note to HOLLEY, CLARK AND VIVION."

This unchallenged finding by the trial court refutes the theory of ratification. Unchallenged findings are binding and conclusive on this court. *Blanton v. Bruce*, 688 S.W.2d 908 (Tex.App.—Eastland 1985, writ ref'd n.r.e.); *Wade v. Anderson*, 602 S.W.2d 347 (Tex.Civ.App.—Beaumont 1980, writ ref'd n.r.e.).

The first point of error is overruled. Our holding on the first point makes it unnecessary to consider the second and third points which attack the trial court's findings concerning an additional basis for Grelling's discharge on the obligation.

In the fourth and fifth points, appellants contend that the trial court erred in refusing to find that Grelling is liable to appellants in the amount of the unpaid deficiency and for attorney's fees. In the sixth point, appellants urge that the trial court erred in entering a take nothing judgment. We have held that the trial court's finding of a novation agreement, adverse to appellants, is supported by legally and factually sufficient evidence. Accordingly, we overrule the remaining points of error.

The judgment of the trial court is affirmed.