IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 92-1925

_____

FEDERAL DEPOSIT INSURANCE,
CORPORATION as receiver for
Liberty Federal Savings and
Loan Association,

Plaintiff-Appellee,

versus

JACK WAGGONER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Texas

_____

August 23, 1993

Before GOLDBERG, HIGGINBOTHAM, and EMILIO M. GARZA, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

The FDIC sued Jack Waggoner on a promissory note. The district court granted the FDIC summary judgment and Waggoner appeals. Because three notes were tied together by their terms and in the note case when the FDIC arrived, the principle of D'Oench, Duhme does not bar consideration of all three in determining whether personal liability was created. We find that under Texas law the extension and renewal of a note without personal liability does not create personal liability unless the parties intended a novation. There is no evidence that a novation was intended, and reading the instruments together, we conclude that Waggoner is not personally liable.

I.

In 1985, Waggoner executed two notes payable to Liberty Federal Savings and Loan in the amounts of $255,000.00 and $305,000.00, but the notes disclaimed any personal liability of Waggoner:

> Except as provided in this paragraph, there shall be no personal liability on Maker, his personal representatives, heirs or assigns hereunder, or under any other instrument evidenced by this Note, or executed in connection herewith, and Payee and any subsequent holder hereof will look solely to the collateral described in the Security Agreement and will not seek any money judgment against Maker, his personal representatives, heirs or assigns, in the event of default in the payment of indebtedness evidenced hereby or in the event of any default hereunder or under any instrument evidencing or securing payment of this Note.

In the event of default, Waggoner risked only the collateral he pledged. The collateral was outlined in separate security agreements and consisted of Waggoner's interest in two limited partnerships. The original notes came due in 1986 but were not paid. Waggoner and Liberty then executed a single promissory note for $588,359.32, evidencing the debt of the two unpaid notes, including as a part of its principal, unpaid interest from the original notes. In banking parlance, the two notes were "rolled over and consolidated." The consolidated note recited that it was a renewal and extension of the original notes, but did not repeat the language restricting the liability of Waggoner contained in the original notes.

Sometime in late 1986 or early 1987, the FSLIC was appointed receiver for Liberty, and on July 26th, 1987, a security agreement was executed between Waggoner, Liberty and the FSLIC. In 1989, as

2

required by Congress, the FDIC took over as receiver of Liberty.[1] In 1990, the FDIC sued on the consolidated note seeking to recover from Waggoner individually.  The FDIC had all three notes in its possession at the time it brought suit.  In its motion for summary judgment, the FDIC argued that under D'Oench, Duhme & Co. v. FDIC, 315 U.S. 447 (1942),[2] Waggoner cannot point to the original notes as evidence of his contention that he had no personal liability or that, in any event, under Texas contract law the terms of the consolidated note supersede the terms of the original notes.

Waggoner also moved for summary judgment, denying that D'Oench, Duhme controls, because the FDIC had all the notes in its possession and the original notes are referenced in the body of the consolidated note.  Second, Waggoner argued that under Texas law the original notes and consolidated notes must be read together, because there are no contradicting terms.  So read, Waggoner argues he had no personal liability.  The district court held that D'Oench, Duhme controlled and granted summary judgment for the FDIC.  We reverse and render judgment for Waggoner.

II.

D'Oench, Duhme "bars defenses or claims against the FDIC that are based on unrecorded or secret agreements that alter the terms

---

[1]The Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA") transferred FSLIC's functions to FDIC. See Federal Sav. & Loan Ins. Corp. v. Griffin, 965 F.2d 691, 695 (5th Cir. 1991), cert. denied, 112 S.Ct. 1163 (1992).

[2]The FDIC also relied on 12 U.S.C. § 1823(e) which is essentially a codification of D'Oench, Duhme.  Bowen v. FDIC, 915 F.2d 1013, 1015 n.3 (5th Cir. 1990).

of facially unqualified obligations." FDIC v. Hamilton, 939 F.2d 1225, 1228 (5th Cir. 1991) (citing D'Oench, Duhme, 315 U.S. at 460, 62 S.Ct. at 680, 86 L.Ed. at 965). The doctrine "attempts to ensure that FDIC examiners can accurately assess the condition of a bank based on its books." Bowen v. FDIC, 915 F.2d 1013, 1016 (5th Cir. 1990). It protects against "scheme[s] or agreement[s] which would tend to either deceive or mislead the creditors of the bank or bank examiners." Hamilton, 939 F.2d at 1228; see also Bowen, 915 F.2d 1013.

The notes in this case, however, are not unrecorded or secret. The original notes were both recorded and in the bank's records, and the consolidated note sued on here specifically references the two original notes. In fact, the FDIC produced the original notes during discovery. "The doctrine of D'Oench, Duhme has not been read to mean that there can be no defenses at all to attempts by the FDIC to collect on promissory notes." FDIC v. Laquarta, 939 F.2d 1231, 1237 (5th Cir. 1991); see also FDIC v. McClanahan, 795 F.2d 512, 515 (5th Cir. 1986). Rather, "[i]t only bars those defenses of which FDIC could not have been put on notice by reviewing records on file with the bank." RTC v. Sharif-Munir-Davidson Development Corp., 992 F.2d 1398 (5th Cir. 1993); see also Laquarta, 939 F.2d at 1237. These notes are not the kind of secret agreements or side dealings rejected by D'Oench, Duhme. The FDIC's argument that D'Oench, Duhme prevents consideration of the terms of the two original notes, is in effect, that D'Oench, Duhme is a parole evidence rule. This contention takes the doctrine too far.

4

We conclude that the district court erred in interpreting D'Oench, Duhme to bar the use of the original notes from Waggoner's defense.

III.

With no federal bar to consideration of all three notes, the liability imposed is a question of state law, specifically the effect of the consolidated note upon Waggoner's personal liability. Texas law provides that "[w]hen one or more of the instruments involved in a transaction are promissory notes, the rule of incorporation by reference applies so that the instruments will be read together whether or not they expressly refer to one another." Meisler v. Republic of Texas Sav. Ass'n, 758 S.W.2d 878, 884 (Tex. App.-- Houston 1988, no writ); see also Estrada v. River Oaks Bank & Trust Co., 550 S.W.2d 719, 726 (Tex. Civ. App.-- Houston 1977, writ ref'd n.r.e.). The original two notes affirmatively rejected personal liability. The consolidated note did not. Read together, Waggoner is not personally liable for the underlying debt. The question in this case therefore reduces to whether the original notes and the consolidated note are part of the same transaction. In other words, the renewal and extension of the original notes can only result in Waggoner being personally liable if the parties intended a novation of the debts evidenced by the first two notes.

A novation is "the creation of a new contract in place of the old one." Crook v. Zorn, 95 F.2d 782, 783 (5th Cir. 1938). The elements of a novation are (1) a previous, valid obligation; (2) an agreement of the parties to a new contract; (3) the extinguishment of the old contract; and (4) the validity of the new contract.

5

E.g., Mandell v. Hamman Oil and Refining Co., 822 S.W.2d 153, 163 (Tex. App.-- Houston 1991, writ denied).  The validity of the first two notes is not disputed.  Nor do the parties question that the renewal and extension of the prior notes by the consolidated note created a new and valid contract.  See, e.g., Schwab v. Schlumberger Well Surveying Corp., 198 S.W.2d 79, 82 (Tex. 1946); McNeill v. Simpson, 39 S.W.2d 835, 835-36 (Tex. Comm'n App. 1931, judgment adopted); Summit Bank v. The Creative Cook, 730 S.W.2d 343, 346 (Tex. App.-- San Antonio 1987, no writ); Priest v. First Mortgage Co., 659 S.W.2d 869, 871 (Tex. App.-- San Antonio 1983, writ ref'd n.r.e.).  The creation of a new contract, however, does not automatically work a novation.  There remains the question of whether the new contract extinguished the old; that is, whether the consolidated note extinguished the debt evidenced by the two original notes.[3]

---

[3]The FDIC relies on the proposition that where renewal notes are involved, the holder may sue based upon either the renewal note or the original note.  See, e.g., Thompson v. Chrysler First Business Credit Corp., 840 S.W.2d 25 (Tex. App.-- Dallas 1992, no writ).  The holder may sue under either note because both represent the same underlying obligation.  But as the court in Thompson explained, "[t]his rule holds true unless there has been a proven novation."  Id. at 29.  "Obviously, if there is a proven novation, the new note supersedes the old."  Id. n.3.  Thus, this principle sheds no light on whether there has been a novation and is inconsistent with the FDIC's position on that question.

Under Texas law,

> [i]t is well settled that the giving of a new note for a debt evidenced by a former note does not extinguish the old note unless such is the intention of the parties. Nor is there a presumption of the extinguishment of the original paper by the execution and delivery of a new note. The burden of proving a novation is on the person asserting it.

Villarreal v. Laredo National Bank, 677 S.W.2d 600, 607 (Tex. App. -- San Antonio 1984, writ ref'd n.r.e.); see also Schwab, 198 S.W.2d at 82; Bank of Austin v. Barnett, 549 S.W.2d 428, 430 (Tex. Civ. App.-- Austin 1977, no writ). "In general the renewal merely operates as an extension of time in which to pay the original indebtedness." Schwab, 198 S.W.2d at 82. A novation can be demonstrated "like any other ultimate fact, [through] inference from the acts and conduct of the parties and other facts and circumstances." Chastain v. Cooper & Reed, 257 S.W.2d 422, 424 (Tex. 1953).

A novation may arise from an inconsistency between the two contracts. In other words, "substitution of a new agreement occurs when a later agreement is so inconsistent with a former agreement that the two cannot subsist together." Scalise v. McCallum, 700 S.W.2d 682, 684 (Tex. App.-- Dallas 1985, writ ref'd n.r.e.); see also Chastain, 257 S.W.2d at 424; Willeke v. Bailey, 189 S.W.2d 477, 479 (Tex. 1945). Here, the original notes and the consolidated note are not inconsistent. Much of the language in the consolidated note is taken verbatim from the original notes and the consolidated note states that it is a renewal and extension of the original notes. Moreover, the consolidated note involves no new money. The FDIC's contention that the consolidated note

7

involves new debt is unavailing.  While the later note does state that $28,359.32 "evidences new indebtedness," it immediately explains that this amount is "the sum advanced this date to Maker by Payee to pay <u>interest due under the terms of the $305,000.00 Note and the $255,000.00 Note</u>." (emphasis added).  As explained, the two prior notes were rolled over and consolidated.

In <u>Cherry v. Berg</u>, 508 S.W.2d 869 (Tex. Civ. App.-- Corpus Christi 1974, no writ), the second note, like the consolidated note here, recited that it was given in renewal and extension of the unpaid balance on the first note.  Although the interest rates differed on the two notes, 6% on the first and 10% on the second, the court still refused to fund a novation.  <u>Id</u>. at 73.  In this case, the first two notes and the consolidated note provide for a variable rate of interest, but the notes use identical language to explain the applicable rate.[4]  The case for a novation is weaker here than in <u>Cherry</u>.  In contrast, the court in <u>Vivion v. Grelling</u>, 837 S.W.2d 255 (Tex. App.--Eastland 1992, writ denied), affirmed a finding of novation where the second note did not refer to the first and the two notes "differed in a number of material aspects." <u>Id</u>. at 257.  <u>See also</u> <u>Lawler v. Lomas & Nettleton Mortgage</u>

---

[4]All three notes provide for interest

at the same rate of interest per annum on a day-to-day basis as two percent (2%) in excess of the prime rate (being the interest rate quoted from time to time for prime commercial loans not exceeding ninety (90) day maturities which is not necessarily the lowest rate quoted at any given time) quoted by First City National Bank of Houston, Houston, Texas, but in no event less than twelve and one-half percent (12-1/2%) per annum and in no event greater than the maximum allowed by law.

_Investors_, 691 S.W.2d 593, 594-95 (Tex. 1985) (pointing to difference in terms between original note and renewal note, supreme court held that two notes reflected separate obligations).

In _Bank of Austin v. Barnett_, 549 S.W.2d 428 (Tex. Civ. App.-- Austin 1977, no writ), the maker of several promissory notes asserted a novation against the bank, the inverse of this case. The bank made several loans to a collector of oil paintings. The first was evidenced by a purchase money note secured by the four paintings purchased with the proceeds. The second was also a purchase money note secured by a single painting. A third loan was evidenced by a note listing the remainder of the debtor's paintings as collateral. Thereafter, in a series of confusing transactions, the notes were renewed and combined several times. On at least one occasion, the list of collateral did not include all of the paintings used for collateral in the original three notes. The debtor therefore argued that the bank, through the renewals, intended to relinquish some of the paintings as security. The court rejected this contention, concluding that the evidence was insufficient to show an intent "to release the original indebtedness as well as the collateral securing such indebtedness." _Id_. at 430. _Barnett_ is this case with the shoe on the other foot. Just as there was no intent to release the bank's original security in _Barnett_, there is also no evidence to show an intent to relinquish Waggoner's original protection against personal liability.

9

The FDIC presented no evidence, aside from the notes themselves, to support a finding that the parties intended a novation. Waggoner, however, denied any intent to create a novation in his affidavit submitted in support of his motion for summary judgment. He contended that both parties, instead, agreed not to change the status of his personal liability. He also offered Liberty's actions in support this assertion. Despite the fact that the collateral was inadequate to cover the loan, Liberty made no efforts to collect from Waggoner individually for over two years. The parties' actions can be strong evidence of their contract's meaning. See, e.g., Consolidated Engineering Co., Inc. v. Southern Steel Co., 699 S.W.2d 188, 193 (Tex. 1985). We need not rely on these facts, however, because there is no evidence that the parties intended by the consolidated note to work a novation-- and create an obligation that did not earlier exist. The FDIC had the burden on this issue.

Concluding that there was no novation has the practical effect of adding terms to the consolidated note that were not recited by that instrument. This is a by-product of Texas law that requires a melding of all the writings describing the underlying debt in the absence of proof that a novation was intended. The consolidated note did not recite that the prior debt was extinguished. It did not stand silent on the point. Rather, it renewed and extended. That is, there was no novation and we must meld the three instruments. When we do, Waggoner has no personal liability. In sum, the FDIC failed to produce evidence creating a fact issue of

10

intention to create a novation.  We therefore reverse and render judgment in favor of Waggoner.[5]

REVERSED and RENDERED.

---

[5]We need not consider Waggoner's alternative argument that the FDIC is not the holder of the note.