Argued and submitted June 14, affirmed December 4, 1996, petition for review denied April 22, 1997 (325 Or 280)

Frank A. BOERS,
*Appellant,*

*v.*

PAYLINE SYSTEMS, INC.,
an Oregon corporation,
A. Roger Pease and Phillip V. Barcellona,
*Defendants,*

*and*

STOEL, RIVES, BOLEY, JONES & GREY,
*Respondent.*

(9305-03217; CA A87430)

928 P2d 1010

James M. Baumgartner argued the cause for appellant. With him on the briefs was Black Helterline.

Jill D. Bowman argued the cause for respondent. On the brief were Charles F. Adams and Stoel Rives LLP.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

WARREN, P. J.

Edmonds, J., dissenting.

## WARREN, P. J.

This case involves a dispute under the Uniform Commercial Code between a lien creditor and the holder of a perfected security interest in future advances over their relative priorities in the debtor's property. Plaintiff recovered a judgment against defendant A. Roger Pease, which Pease appealed.[1] Pease gave Stoel, Rives, Boley, Jones & Grey (Stoel Rives), the law firm that represented him on the appeal of the judgment, a security interest in his accounts at several brokerages to secure payment of its fees.[2] He did not file an undertaking to stay enforcement of the judgment during the appeal, *see* ORS 19.040(1)(a), and plaintiff subsequently garnished his accounts at those brokerages, thereby becoming a lien creditor under ORS 79.3010(3). Stoel Rives asserted that its prior perfected security interest in the accounts entitled it to priority over the liens created by the garnishments. Plaintiff appeals from an order of the trial court sustaining Stoel Rives' claim of priority.[3] We affirm.

Stoel Rives began representing Pease after the trial court entered judgment against him. Its first action on his behalf was to file post-trial motions; it also agreed to represent him on an appeal to this court. Stoel Rives billed Pease monthly and expected him to "pay all obligations when due."

The question is whether plaintiff, as a lien creditor, has priority in those accounts over Stoel Rives' claims, under the pledge agreement, for fees that Pease incurred after the service of the garnishments. The trial court held that Stoel Rives is entitled to priority for all future services that it renders to Pease on the appeal to this court. It based that decision on ORS 79.3010(4), which provides:

"A person who becomes a lien creditor while a security interest is perfected takes subject to the security interest

---

[1] We subsequently affirmed the judgment against Pease. *Boers v. Payline Systems, Inc.*, 141 Or App 238, 918 P2d 432 (1996).

[2] The pledge was also intended to secure Stoel Rives' fees in case Pease decided to file a bankruptcy petition. Stoel Rives does not challenge the trial court's determination that it does not have priority over plaintiff for those fees.

[3] The order is appealable as a final order affecting a substantial right, made after judgment. ORS 19.010(2)(c).

only to the extent that it secures advances made before the person becomes a lien creditor or within 45 days thereafter or made without knowledge of the lien or pursuant to a commitment entered into without knowledge of the lien."

The parties' arguments concerning the validity of the trial court's order require the determination of two things: (1) whether Stoel Rives' provision of legal services is an "advance" as the statute uses the term; and (2) whether it provided those services "pursuant to a commitment." Stoel Rives will satisfy the statutory criteria for priority for future advances only if we decide both issues in its favor. Cases from this and other jurisdictions do not resolve these questions, and the Official Comments to the Uniform Commercial Code are not helpful.

■ The first question is whether Stoel Rives' legal services constitute "advances." In this case, unlike most cases involving these issues, Stoel Rives advanced services, not money. Relying on *Dick Warner Cargo Handling v. Aetna Business Credit*, 746 F2d 126, 130-32 (2d Cir 1984), plaintiff argues that those services are "nonadvances" that do not meet the statutory criteria for priority. However, *Dick Warner* involved legal services that were part of the secured party's expenses of collecting the underlying debt. In this case, the legal services are the subject of the debt and are the primary obligation secured. Unlike the "nonadvances" discussed in *Dick Warner*, they are not collateral to the main purpose of the security agreement. That case does not provide a basis for holding that the fees in this case are not advances.

Plaintiff also points out that ORS 79.2040(3) provides that an obligation covered by a security agreement may include "future advances or other value" whether or not the advances or value are given pursuant to commitment. It argues that the distinction between future "advances" and future "value" shows that the two concepts are not the same. It suggests that an "advance" refers to some value that enriches the debtor's estate, while "value" refers to things provided that do not enrich the estate. Legal services, plaintiff argues, drain the debtor's estate, especially when, as in this case, their purpose is simply to delay the collection of a legitimate obligation that has been reduced to judgment.

One obvious problem with plaintiff's argument is the necessary assumption that Pease's appeal was bound to fail. If the appeal had been successful, it would have produced substantial benefit to Pease's estate. We decline to hold that an agreement to secure the payment of fees for legal services is an "advance" only if those services ultimately achieve the desired result. Even if plaintiff's distinction between "advances" that benefit an estate and "value" that drains it has any merit, that distinction must apply to the purpose of the advance, not to its result.[4] The purpose of these legal fees was to benefit Pease and his estate; they therefore fall on the "advance" side of plaintiff's proposed distinction.

■　　　Plaintiff has thus failed to provide an interpretation of ORS 79.3010(4) that would exclude Stoel Rives' fees for the future legal services that it would perform on the appeal after the creation of and perfection of the security interest.[5] We construe the statute to cover those fees, because the normal legal meaning of "advances" leads to that result.[6] That meaning includes "[t]o pay money *or render other value* before it is due; to furnish something before an equivalent is received * * *. [T]o furnish on credit or before goods are delivered *or*

---

[4] We would not, for instance, hold that a lender would lose its security interest for future advances if those advances enabled the borrower to launch a venture that failed so disastrously that it rendered the borrower penniless.

[5] Plaintiff and the dissent recognize that Stoel Rives is entitled to priority for services that it actually performed before plaintiff's liens attached. That recognition may implicitly concede that Stoel Rives' services were advances under ORS 79.3010(4), as the statute uses the term "advances" to refer both to things provided before a conflicting lien attaches and things provided afterwards. Stoel Rives could have priority for its previous services, thus, only if they were "advances" under the statute.

[6] The dissent fails to recognize that ORS 79.3010(4) gives priority to a secured creditor over a lien creditor to the extent that the secured creditor makes advances *pursuant to a commitment* entered into without knowledge of the lien. The question is when the secured creditor committed itself to make the advances, not when the debtor is required to pay for them. The secured creditor is a future advances lender entitled to priority over a subsequent lien creditor when it does not make the advances at the time of the creation of the security interest but, rather, commits itself at that time to make advances in the future. The time when the debtor becomes obligated to pay for the advances has nothing to do with the secured creditor's status as a future advances lender or with its priority over a lien creditor.

The dissent also fails to recognize that Stoel Rives made the advances at the time that it rendered legal services, not at the later date when it billed for them and when payment became due. Thus, under the dissent's own analysis, Stoel Rives' services were future advances.

*work done*." Black's Law Dictionary 52, (6th ed 1990) (emphasis supplied). This definition does not limit an advance to providing money but includes other kinds of value, thus suggesting that the use of both terms in ORS 79.2040(3) does not make them mutually exclusive. Indeed, that statute seems to be primarily directed to emphasizing that a security agreement may include a broad variety of things, not to creating technical distinctions among those things. The reference in the dictionary definition to "work done" indicates that "other value" includes services. We therefore hold that Stoel Rives has a security interest in future advances under ORS 79.3010(4).

■    We turn to whether the fees that Stoel Rives incurred after the garnishments were advanced "pursuant to a commitment," which is necessary for its security interest to take priority over plaintiff's garnishment. ORS 79.1050(1)(k) provides that an advance is made "pursuant to commitment"

> "if the secured party has bound the secured party to make it, whether or not a subsequent event of default or other event not within the control of the secured party has relieved or may relieve the secured party from the obligation."

Plaintiff argues that Stoel Rives was not obligated to continue to provide legal services to Pease throughout the appeal but could have withdrawn as his attorneys at any time. As a result, plaintiff says, an event within Stoel Rives' control could have relieved it of the obligation. Even if plaintiff's understanding of the attorney-client relationship is correct, withdrawal would have required an order of this court. *See* ORAP 8.10(1). Plaintiff recognizes that fact but appears to assume that the grounds for withdrawal are so broad that this court would have granted a petition to withdraw almost as a matter of course.

■    Plaintiff misses the point of the statute. The question is whether Stoel Rives could relieve itself of the obligation to make future advances by an action that is "within the control of the secured party"; if it could not, any future advance would be made "pursuant to commitment." Because Stoel Rives could not withdraw without this court's permission, withdrawal was not within Stoel Rives' control. Speculation

as to how easy or difficult it would have been to get that permission is simply irrelevant.

Plaintiff has not shown that the trial court erred when it held that the pledge agreement gave Stoel Rives priority over a subsequent lien creditor for its future legal services to Pease on the appeal. We therefore affirm the trial court's decision.

Affirmed.

**EDMONDS, J.,** dissenting.

The majority holds that respondent is entitled to priority under ORS 79.3010(4) based on a perfected security agreement executed in June 1994. Plaintiff's garnishment was served in early September 1994. Plaintiff concedes that respondent's security interest gives them priority for services rendered before the garnishments were served. The question, which the majority resolves in favor of respondent, is whether the security agreement has priority as to services rendered to and charges incurred by the judgment debtor after October 16, 1994, or 45 days after the garnishments were served. The majority characterizes those services as "advances" under the statute and concludes that, therefore, the statute is applicable. For the reasons that follow, I disagree with the characterization of respondent's legal services as "advances" and the conclusion that ORS 79.3010(4) applies.

Plaintiff obtained a judgment against Pease on June 24, 1994. Respondent undertook to represent Pease against plaintiff in post-trial motions before the judgment was entered. After the judgment was entered, respondent and Pease entered into a fee and pledge agreement pertaining to Pease's brokerage accounts for purposes of appeal on June 30, 1994. The security interest in the brokerage accounts was perfected the following month. In September 1994, plaintiff, based on his prior judgment, sought to garnish the brokerage accounts that Pease had pledged to respondent as security. Under the pledge agreement, Pease continued to incur obligations for the legal services performed by respondent as they were rendered. As to when payment was due under the agreement on the obligations, the security agreement states,

"1. *Payment of Obligations. Pease shall pay all obligations when due.* Payment shall be made by Secured Party first applying any funds available from the Deposits described below. Thereafter, Pease shall make such payments." (Emphasis supplied.)

The threshold issue in this case is whether the legal services rendered by respondent after the brokerage accounts were garnished by plaintiff qualify as "advances" under ORS 79.3010(4) in the light of the above agreement. If they do not, then the statute is inapplicable, and the priority claimed by respondent under the statute is lost. The statute provides:

"A person who becomes a lien creditor while a security interest is perfected takes subject to the security interest only to the extent that it secures *advances* made before the person becomes a lien creditor or within 45 days thereafter or made without knowledge of the lien or pursuant to a commitment entered into without knowledge of the lien."

In interpreting a statute, we seek to discern the legislature's intent by first looking at the text and context of the statute. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993). ORS chapter 79 is a codification of the Uniform Commercial Code (UCC) Article 9. The context of ORS 79.3010(4) is "secured transactions" under the UCC. ORS 79.3010(4) provides a rule of priority regarding security interests whose attachment to collateral is authorized by ORS 79.2040. ORS 79.2040(3) is patterned after UCC § 9-204(3) and authorizes the attachment of security interests for "future advances." The statute provides:

"(3)   Obligations covered by a security agreement may include *future advances* or other value whether or not the advances or value are given pursuant to commitment as defined in ORS 79.1050(1)(k)." (Emphasis supplied.)

The official commentary to UCC § 9-204(3), on which ORS 79.2040(3) is based, states, in part:

"As in the case of after-acquired collateral, a security interest based on *future advances* may be subordinated to conflicting interests in the same collateral. *See* Sections *9-301(4)*; 9-307(3); 9-312 (3), (4) and (7)." (Emphasis supplied.)

Additionally, UCC § 9-301(4) (ORS 79.3010(4)) provides:

"A person who becomes a lien creditor while a security interest is perfected takes subject to the security interest only to the extent that it secures *advances* made before he becomes a lien creditor or within 45 days thereafter or made without knowledge of the lien or pursuant to a commitment entered into without knowledge of the lien." (Emphasis supplied.)

The official commentary to UCC § 9-301(4) refers repeatedly to "future advances." One commentator, referring to UCC § 9-301(4) writes:

"The purpose of this provision is to balance the interest of a *future advance lender* and a lien creditor by giving priority to the lender for advances made * * *." Clark, *The Law of Secured Transactions under the Uniform Commercial Code*, 3-31 (1993). (Emphasis supplied.)

It is clear, then, that a necessary element of an "advance" under § 9-301(4) is that the *quid pro quo* for what is advanced is not due contemporaneously with the advance. For example, in *Kimbell Foods, Inc. v. Republic Nat'l Bank*, 557 F2d 491 (5th Cir 1977), the future advances involved the advance of inventory on credit. Payment for the inventory was by a promissory note due at a later time. In sum, the interpretation of the word "advances" in ORS 70.3010(4), when read in the context of ORS chapter 79 and the UCC, can refer to nothing other than to agreements to make future advances.

Thus, by their very nature, "advances," as contemplated by ORS 79.3010(4), do not encompass concurrent performances of the obligations to exchange services for consideration. The significance of that concept to this case is that respondent's prior perfected security agreement could take priority over plaintiff's subsequent lien only if the legal services furnished by respondent after October 16, 1994, were "advanced" and payment was not due contemporaneously. The pledge agreement is clear. Pease was obligated to pay for respondent's legal services *at the time they were furnished,* and the obligation to pay for the services was not delayed until a future date. Under the agreement, respondent could reach the assets of the brokerage accounts for payment upon

rendering their services. No delay in payment is contemplated by the agreement. The majority's assertion that what is controlling is that the commitment to furnish the services was made in June 1994 is wrong. It does not matter when the commitment or agreement was made if it did not contemplate a future advance of services within the meaning of the statute. Nothing in the commitment between Pease and respondent defers payment or extends services on credit after the services are rendered.[1]

The majority is also wrong when it characterizes the agreement as rendering services with the expectation of payment at a later date. The billing for services at the end of the month for services rendered during the month could not constitute a future advance under the statute and the UCC. Otherwise, all monthly billings on an account would fall within the category of future "advances" and, clearly, the statute and the UCC use "advances" as a word of art that connotes a difference from typical billing practices on an open account when the balance is due at the end of the billing period. Thus, the majority's opinion supplies a context to the word "advances" that is wholly inconsistent with the meaning of the word in the UCC, and it is for this reason that the legal services rendered by respondent do not qualify as "future advances" under ORS 79.3010(4).

Nonetheless, respondent argues that they are entitled to priority under ORS 79.2040(3). They assert that even if ORS 79.3010(4) is not applicable, their security agreement covered services to be rendered in the future and that because their security interest was perfected before plaintiff's lien and remained in effect after October 16, 1994, it has priority. *See* ORS 79.3120(5)(a) (regarding the determination of priorities among conflicting security interests in the same collateral). The flaw in respondent's argument is that this case is not about the priority between two competing security interests. Rather, it is about a judgment creditor's priority over a security interest that attaches only when the services

---

[1] ORS 646.639(1)(d), regarding unlawful trade practices, provides, " 'Credit' means the right granted by a creditor to a consumer to defer payment of a debt, to incur a debt and defer its payment, or to purchase or acquire property or *services* and defer payment." (Emphasis supplied.)

are performed. In the absence of a specific statute that gives the security interest priority over the lien arising from the garnishment under a judgment entered prior to respondent's security interest, there is no legal ground for concluding that the services rendered after October 16, 1994, have priority.

For these reasons, I dissent.